UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Keith J. Kerns, *et al.*, | ) | CASE NO. 15 CV 346 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Chesapeake Exploration, LLC, *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant American Energy–Utica LLC's Motion to Dismiss Second Amended Complaint (Doc. 29) and Defendant Chesapeake Exploration, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 30). Also pending is the Motion of Defendants Chief Rick Simmers and the Division of Oil and Gas Resources Management to Dismiss Plaintiffs' Second Amended Complaint (Doc. 38). This case involves property rights related to natural gas located below the surface of plaintiffs' land. For the reasons that follow, the motions to dismiss are GRANTED.

1

**FACTS**

Plaintiffs,[1] Keith J. Kerns, Corey A. Kerns, Mark Zantene, Linda Zantene, Edith Wagner, the Robert J. Zantene Trust, and Helen Zantene, bring this action against defendants, Chesapeake Exploration, LLC, American Energy-Utica, LLC, (together, the "Gas Company Defendants") the Division of Oil and Gas Resources Management ("DOGRM"), and Rick Simmers.  Simmers is the Chief of DOGRM.  The complaint generally alleges wrongdoing in connection with the potential "takings" of plaintiffs' natural gas rights located beneath the surface of their land.

Ohio Revised Code Section 1509.28 allows Simmers, on his own motion, or upon "application by the owners of sixty-five percent of the land area overlying [a gas pool]" to request approval by Simmers for the "pooling" of natural gas.  Plaintiffs allege that they own 127 acres in the proposed "pooling" area.  According to the complaint, plaintiffs made a number of attempts to negotiate with the Gas Company Defendants in order to determine fair compensation for the natural gas rights.  Ultimately, the negotiations proved unsuccessful.  The Gas Company Defendants then applied to DOGRM for forced unitization.  In the event the Gas Company Defendants' application is approved, horizontal drilling will be permitted, during which water, sand, and chemicals will be injected into the land in order to hydraulically fracture the shale and remove natural gas from below the surface of plaintiffs' land.  To date, the application has not yet been ruled on by Simmers.

---

[1] Plaintiffs filed a Second Amended Complaint, which does not specifically identify the names of the plaintiffs.  The Court presumes that all plaintiffs initially named in the complaint are parties to the Second Amended Complaint.

The complaint contains four claims for relief. Count one alleges a takings claim in violation of the Fourteenth Amendment, 42 U.S.C. § 1983, and the Ohio Constitution. Plaintiffs also claim that their constitutional right to contract is infringed. Count two seeks an injunction. Count three seeks damages and count four seeks punitive damages. Defendants move to dismiss the complaint and plaintiffs oppose the motions.

**STANDARD OF REVIEW**

Rule 12(b)(6)

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993). Legal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal Rule 12(b)(6) review. *Fingers v. Jackson-Madison County General Hospital District,* 101 F.3d 702 (6th Cir. Nov. 21, 1996), *unpublished*. Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

In addition, a claimant must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of

action will not do." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1955 (2009). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Id.* at 1949 (citations and quotations omitted). *See also, Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir.2009).

Rule 12(b)(1)

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton*, 798 F.2d 913, 915 (6th Cir. 1986). This burden is not onerous. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). The party need only show that the complaint alleges a substantial claim under federal law. *Id*.

A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial attacks question the sufficiency of the jurisdictional allegations in the complaint. *Id*. Thus, those allegations must be taken as true and construed in the light most favorable to the nonmoving party. *Id*. Factual attacks, however, challenge the actual fact of the court's jurisdiction. *Id*. In such cases, the truthfulness of the complaint is not presumed. *McGee v. East Ohio Gas Co.*, 111 F.2d 979, 982 (S.D. Ohio 2000) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990)). Instead,

the Court may weigh any evidence properly before it. *Morrison v. Circuit City Stores, Inc.*, 70 F.Supp.2d 815, 819 (S.D. Ohio 1999) (citing *Ohio Nat'l*, 922 F.2d 320; *Rogers*, 798 F.2d 913).

When presented with a facial attack, the non-moving party "can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical*, 89 F.3d at 1248. Thus, such a motion will be granted only if, taking as true all facts alleged in the complaint, the Court is without subject matter jurisdiction to hear the claim. *Matteson v. Ohio State University*, 2000 WL 1456988 *3 (S.D. Ohio Sept. 27, 2000).

**ANALYSIS**

Defendants make a number of arguments that they claim require dismissal of this action. Because the Court finds defendants' ripeness argument to be dispositive, the Court will address this issue first. According to defendants, Simmers has yet to make a final decision regarding the Gas Company Defendants' unitization application. In response, plaintiffs argue that this case is ripe for adjudication and that they need not wait for a final decision before filing suit. Plaintiffs make this argument in part because they claim that their challenge to O.R.C. § 1509.28 is a facial challenge.

As noted by the Sixth Circuit, "[i]t is important at the outset to distinguish two different types of Takings Clause challenges: challenges to the public-use requirement and challenges to the just-compensation requirement." *Wilkins v. Daniels*, 744 F.3d 409, 417. Plaintiffs argue that they assert both types of claims.

With regard to just-compensation claims, the aggrieved party concedes that the "government acted within the scope of its authority and assert[s] that the government must provide the affected party with 'just compensation.'" *Id*. Just-compensation claims, whether

5

challenged "as applied" or facially, are subject to a ripeness test. *Id*. Before a federal court may hear a just-compensation takings claim, the plaintiff must have sought "compensation through the procedures the State has provided for doing so." *Id*. (*quoting Williamson Cty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95 (1985)).

As an initial matter, there is no allegation that defendants have effected a "taking" of plaintiffs' property as plaintiffs are currently free to dispose of their natural gas rights in any way they see fit.[2] Unless and until DOGRM acts on the Gas Company Defendants' application, it is difficult to see where plaintiffs' claim lies. Regardless, even if the statute could be subject to a facial "just compensation" challenge, there are no allegations indicating that plaintiffs availed themselves of Ohio's procedures for obtaining just compensation. Moreover, Ohio's mandamus procedures are "reasonable, certain, and adequate" for obtaining compensation. *See, McNamara v. City of Rittman*, 473 F.3d 633, 638 (6th Cir. 2007)(noting that Ohio's procedures satisfy the *Williamson* test).[3] Because plaintiffs have not availed themselves of Ohio's procedures, plaintiffs' claims fail to the extent they are based on "just compensation" regardless of whether

---

[2] Plaintiffs rely on *Horne v. Dep't of Agriculture*, 135 S.Ct. 2419 (2015) for the proposition that the regulation equates to a clear physical taking. Plaintiffs' reliance is misplaced. In *Horne*, the regulation *required* plaintiffs to provide the government with physical possession of plaintiffs' raisins. In contrast, the statute at issue here applies to plaintiffs if and only if Simmers approves an application for unitization.

[3] O.R.C. § 1509.28 contains certain compensation provisions. Because defendants have not acted on plaintiffs' application, however, the compensation provisions do not apply to plaintiffs. Moreover, this provision does not, on its face, prevent plaintiffs from invoking Ohio's appropriation procedures.

plaintiffs assert a facial or an as applied challenge.  These claims are not yet ripe and, therefore, the Court finds that dismissal is warranted.[4]

The Court further finds that dismissal of plaintiffs' "due process" claims is appropriate. The Court concludes that these claims are ancillary to plaintiffs' unripe takings claim.  Plaintiffs challenge certain components of the unitization statute's procedures for determining "just compensation."  To allow plaintiffs to purse these claims without the provisions having been applied to plaintiffs and before plaintiffs seek just compensation through available means would allow an end-run around the ripeness requirement.  The contrary result would implicate the Sixth Circuit's "concern that a party could easily bypass the *Williamson County* rule by attaching an unclear and underdeveloped procedural due process claim to a takings claim."  *Braun v. Ann Arbor Charter Township*, 519 F.3d 564 (6th Cir. 2008).  Accordingly, to the extent plaintiffs are asserting procedural or substantive due process claims, those claims are unripe and therefore dismissed.

Plaintiffs next argue that a "public use" challenge need not satisfy ripeness considerations.  The Court finds, however, that plaintiffs' complaint does not state a public use claim.  The second amended complaint is replete with allegations regarding "just compensation."

---

[4] Plaintiffs rely on *Horne v. Dep't of Agriculture*, 133 S.Ct. 2053 (2013) in support of their position that their claims are ripe even though they did not seek just compensation under Ohio law. *Horne*, however, is readily distinguishable.  As an initial matter, the Court determined that plaintiffs had no "reasonable, certain, and adequate" means of obtaining just compensation.  In addition, plaintiffs in that case refused to turn over raisins although government regulation required them to do so.  The government fined plaintiffs for their refusal.  The Court held that plaintiffs could raise a takings claim in defense to the government's action. Neither concern is relevant here.

7

On the other hand, plaintiffs point to the following four allegations, which they contend state a public use claim:

> 16. [The Gas Company Defendants] further seek pursuant to Section 1509.28 to have [defendants Simmer and DOGRM] determine that the taking of said oil, gas and natural gas liquids is for public use.
>
> 32. The Application further erroneously states that the Plaintiffs' land has been leased to Defendant AEU.[5]
>
> Plaintiffs also point out that in their prayer for relief they ask that the Court:
>
> 6. Declare that Section 1509.28 on its face, and Defendants' Application, are unlawful in that they seek to have an administrative agency determine public use, in place of a court of law....
>
> 7. Declare whether or not the taking of Plaintiffs' oil, gas, and natural gas liquids, and the horizontal drilling and hydraulic fracturing beneath the surface of Plaintiff's land is a public use.

None of these allegations allege that the takings at issue does not involve a public use. At best these allegations claim that the Court, as opposed to DOGRM, must determine whether the "use" is a "public use."  But, noticeably absent are any allegations that the unitization and pooling of natural gas rights is a private –as opposed to public– use.  Thus, a fair reading of plaintiffs' complaint does not disclose a claim for failure to satisfy the "public use" requirement.

This is especially so in light of the unique nature of public use claims.  As the Sixth Circuit has held:

> Examples of a taking for private use tend to be 'estoteric' because all that is required is for the taking to be considered for public use is a rational relationship to some 'conceivable public purpose.'  Very few takings will fail to satisfy that standard.  As a

---

[5] Although not cited by plaintiffs, Paragraph 33 alleges that Section 1509.28 denies plaintiffs "their right to have a court of law determine whether a lawful public use exists for the taking of their property."

8

result, the examples suggested in the reported cases tend to be highly implausible hypotheticals.

*Montgomery v. Carter County*, 226 F.3d 758, 765-66 (6th Cir. 2000)(citations omitted)(noting that the case involves a "rare real-life example" of a private takings where state invaded plaintiff's driveway to ensure that neighbor could receive mail). "In the overwhelming majority of cases, there will virtually be no chance that the plaintiff will be able to make the extraordinarily difficult showing that a taking had no rational connection to a minimally plausible conception of the public interest." *Id*. at 768. As such, "reasonable plaintiffs...are unlikely to run to federal court to press a private-use takings claim on which there is virtually no chance of success." *Id*. (noting that plaintiffs who do so may be subject to a "significant risk" of sanctions).

Given the unique nature of public use claims, the Court finds that plaintiffs fail to allege such a claim in the complaint. As set forth above, the complaint contains no express allegation that the use at issue is a private use. Nor are there any facts alleged that could support such a claim under *Iqbal* and *Twombly*.[6] Accordingly, the Court finds that plaintiffs fail to allege a public use claim.[7]

---

[6] Although the court in *Montgomery* noted in passing that it is "easy to allege something in the complaint," the Opinion was issued before *Iqbal* and *Twombly*.

[7] The simple fact that private parties are involved in the process does not provide a sufficient basis for stating a "public use" claim. *See*, *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 240-41 (1984)("The mere fact that property taken outright by eminent domain is transferred in the first instance to private beneficiaries does not condemn that taking as having only a private purpose. The Court long ago rejected any literal requirement that condemned property be put into use for the general public.").

Moreover, to the extent plaintiffs claim that O.R.C. § 1509.28 denies them the right to a "de novo" determination of "public use," the claim is legally insufficient. With regard to determinations of "public use," "[j]udicial deference is required because, in our system of government, legislatures are better able to assess what public purposes should be advanced by an exercise of the taking power." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 240-41 (1984). Plaintiffs point to no legal authority requiring Ohio to provide them with the right to a de novo determination of "public use."

Plaintiffs' argument that their Section 1983 claim need not satisfy exhaustion requirements is misplaced. As noted in *Willimason*, "the question of whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable. *Williamson*, 105 S.Ct. at 3119. Therefore, although Section 1983 claims may not be subject to exhaustion requirements, they are subject to finality requirements.

The Court further finds that dismissal of plaintiffs' Contracts Clause claim is warranted because plaintiffs wholly fail to allege the existence of a contract. In order to state a claim under the Contracts Clause, plaintiff must "demonstrate that a change in [] law has operated as a substantial impairment of a contractual relationship." *Masico v. Public Employees Retirement Syst. of Ohio*, 160 F.3d 310, 313 (6th Cir. 1999). The elements of a claim are: (1) an existing contract, (2) a change in the law that impairs the contract, and (3) an impairment that is substantial. *Id.* Here, plaintiffs fail to allege the existence of a contract. Rather the express

allegations in the complaint assert that no contract exists.[8] (Doc. 25 at ¶ 30). Therefore, plaintiffs' Contracts Clause claim fails to state a claim for which relief may be granted. *See, Puckett v. Lexington-Fayette Urban County Gov't,* 566 Fed.Appx 462 (6th Cir. May 21, 2014)(claim fails where plaintiff is unable to show the existence of a contract); *Golden Rule Ins. Co. v. Stephens*, 912 F.Supp.2d 261 (no claim where plaintiff's true complaint lies not in the impairment of an existing contract, but in prohibitions affecting its ability to make future contracts).[9]

Having failed to state a federal claim ripe for review, the Court declines supplemental jurisdiction over plaintiffs' state law claims.[10]

**CONCLUSION**

For the foregoing reasons, the motions to dismiss are GRANTED.

IT IS SO ORDERED.

---

[8] The allegations in the complaint directly refute plaintiffs' statement in their brief that current leases exist. Even assuming *arguendo* that certain leases exist, there are no allegations that O.R.C. § 1509.28 somehow impairs those leases.

[9] This claim fails with respect to the Gas Company Defendants for the additional reason that the complaints does not allege state action as to these defendants.

[10] 28 U.S.C. § 2201, *i.e.*, the Declaratory Judgment Act, is not an independent jurisdictional basis. Rather, it only provides courts with discretion to fashion a remedy. *Heydon v. MediaOne of Southeast Michigan, Inc.*, 327 F.3d 466, 471 (6th Cir. 2003). Nor are plaintiffs' "claims" for equitable and injunctive relief, compensatory damages, and punitive damages ripe.

                                      /s/ Patricia A. Gaughan
                                      PATRICIA A. GAUGHAN
                                      United States District Judge

Dated: 9/1/15